IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

CLIFTON INGRAM                                                          PLAINTIFF

V.                              NO.  3:06cv00170 WRW-JWC

DICK BUSBY, et al                                                      DEFENDANTS

PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**Instructions**

The following recommended disposition has been sent to United States District

Court Judge William R. Wilson, Jr.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and two copies of your

objections must be received in the office of the United States District Court Clerk no later

than eleven (11) days from the date of these findings and recommendations.  A copy will

be furnished to the opposing party.  Failure to file timely objections may result in waiver of

the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,

or additional evidence, and to have a hearing for this purpose before the District Judge,

you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge  (if such
        a  hearing is granted)  was not  offered at  the hearing before the Magistrate
        Judge.

3.      The detail of any testimony desired to be introduced at the hearing before
        the District Judge in the form of an offer of proof,  and a copy,  or the original,

of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR  72201-3325

### Recommended Disposition

On March 16, 2007, Defendants filed a motion for summary judgment and brief in support (docket entries #45, #46) seeking to dismiss Plaintiff's 42 U.S.C. § 1983 complaint on the grounds that he had failed to establish a constitutional violation.  Defendants also filed a statement of indisputable material facts (docket entry #47) pursuant to Local Rule 56.1 of the Rules of the United States District Court for the Eastern District of Arkansas. By order entered March 19, 2007 (docket entry #49), Plaintiff was notified of his opportunity to file a responsive pleading opposing Defendants' motion.  In addition, Plaintiff was advised to file a separate, short and concise statement setting forth the facts which he thought needed to be decided at a trial.  In response, Plaintiff filed two notices of evidence in support (docket entries #51, #53) as well as a statement of facts (docket entry #52).

### I.  Facts

According to Plaintiff's original complaint (docket entry #2), the Crittenden County Detention Facility was germ infested with rodents and insects, inmate/detainees were housed with and exposed to other inmate/detainees with various "airborne diseases and other diseases" such as Tuberculosis, Hepatitis B & C, AIDS, and extreme cases of staph

infection.  No recreation or form of entertainment was provided (i.e., no reading material, television or radio, and only a local newspaper), there was no intercom system in the event of an emergency, two to three inmate/detainees were housed together in 8' x 9' cells, misdemeanor inmate/detainees were housed with maximum security inmate/detainees, all those incarcerated were charged $5.00 to $15.00 per medication and denied medical treatment if they could not afford to pay, there were no notary services, and there was no access to a law library.

Plaintiff originally sued Defendant Busby, Crittenden County Sheriff.  In his motion to amend to add additional Defendants (docket entry #3),[1] Plaintiff included Defendants Bonner (chief jailer) and Thornton (jail administrator) in his lawsuit based on their alleged knowing disregard of the detention center's grievance procedure, and deliberate disregard of policy for disciplinary and punitive action by locking down misdemeanor inmate/detainees and felons in the same pod.  Plaintiff also alleged that he was attacked and beaten (for wanting to see a supervisor) on March 27, 2006, by officers James Huff and Shannon Childers and denied medical attention because he was unable to pay. However, he has never named these individuals as Defendants.  Plaintiff further alleged that there were no TB lights in the pod and there was no inmate handbook; yet inmates were "tortured" for the unknown rules broken.

Plaintiff next filed a motion to amend to include a particular exhibit (docket entry #6)[2] alleging that he had been on "unwarranted lock down" status for six months and had filed

---

[1] Subsequently docketed as entry #19, Plaintiff's first amended complaint.

[2] Subsequently docketed as entry #20, Plaintiff's second amended complaint.

fourteen grievances seeking relief from same yet none had been answered.  This filing was followed by six notices of filing additional information that alleged: (1) Plaintiff was diagnosed with Tuberculosis in July 2006, prescribed medication by the Crittenden County Health Department, and was allegedly denied his medication for seven weeks (docket entry #12); (2) Plaintiff was placed on "23/1" lock down on September 29, 2006, by order of Defendant Bonner allegedly in retaliation for talking too much about having TB and not receiving his medication (docket entry #14); and (3) Plaintiff was allegedly threatened by Defendants' attorney to file no further complaints with jail administration, all his grievances were ignored, and he feared further criminal charges would be brought against him before his release in retaliation for filing the present lawsuit (docket entry #15).

## II.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences.  Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999).   A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial. Celotex, 477 U.S. at 322-23.  To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists.  Id. at 324; Fed. R. Civ. P. 56(e).  A

nonmovant has an obligation to present affirmative evidence to support his claims.  <u>Settle</u> <u>v. Ross</u>, 992 F.2d 162, 163-64 (8th Cir. 1993).  A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment.  <u>Burgess v. Moore</u>, 39 F.3d 216, 218 (8th Cir. 1994).  Moreover, pro se complaints must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers."  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

### III.  Analysis

At the outset, the Court notes that it has never been made clear whether Plaintiff was a pretrial detainee or a prisoner being punished for having committed a crime when the alleged incidents occurred.  However, Defendants' statement of indisputable material facts (docket entry #47) indicates that Plaintiff was taken into the custody of the Crittenden County Sheriff's Office on February 16, 2006, and sentenced to serve four years with fines totaling $4,445.00 on March 20, 2006.  Although Defendants analyze Plaintiff's claims as a pretrial detainee, the evidence indicates the contrary.  This Court will therefore apply the legal standards appropriate to a convicted prisoner.

### A.    Respondeat Superior Liability

Defendants first contend that Plaintiff has failed to establish any personal involvement by Defendant Sheriff Busby in any of the incidents alleged and instead attempts to impose liability solely on the basis of the actions and/or omissions of Defendant Busby's employees.

For a defendant to be held liable under § 1983, he or she must have personally participated in, or had some responsibility for, the particular act which deprived the plaintiff of a constitutionally protected right.  <u>Ellis v. Norris</u>,179 F.3d 1078, 1079 (8th Cir. 1999);

Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990).  "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."  Madewell, 909 F.2d at 1208 (citing Rizzo v. Goode, 423 U.S. 362, 370-71, 375-77 (1976); Cotton v. Hutto, 577 F.2d 453, 455 (8th Cir. 1978) (per curiam)).   The doctrine of respondeat superior is generally an improper basis upon which to rest a § 1983 claim because an individual cannot be held liable solely on the actions or inactions of his or her subordinates.  Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).  Moreover, "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability."  Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)).

Plaintiff has never made any specific allegation against Defendant Busby, nor does he allege that the sheriff has overseen or implemented a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct, which caused the alleged constitutional injury.  A supervisor can be held individually liable under § 1983 if he "directly participates in a constitutional violation or if [his] failure to properly supervise and train the offending employee caused a deprivation of constitutional rights."  Askew v. Millerd, 191 F.3d 953, 958-59 (8th Cir. 1999) (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996) (citing Tilson v. Forrest City Police Dep't, 28 F.3d 802, 806 (8th Cir. 1994)).  However, "a single incident, or a series of isolated incidents," usually will not provide a sufficient "basis upon which to assign supervisory liability."  Howard v. Adkison, 887 F.2d 134, 138 (8th Cir. 1989) (citing Williams v. Willits, 853 F.2d 586, 588 (8th Cir. 1988)).  In order to hold Defendant Busby individually liable under § 1983, Plaintiff must show that as the sheriff, Defendant Busby was "deliberately indifferent to or tacitly authorized the

6

offending acts . . . . This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Andrews, 98 F.3d at 1078 (citing Tilson, 28 F.3d at 807; Thelma D. v. Bd. of Educ., 934 F.2d 929, 934 (8th Cir. 1991)).  Plaintiff cannot meet this standard.  There is no allegation that Defendant Busby had any knowledge or was placed on notice of the numerous conditions of which Plaintiff complains.  There is no allegation or evidence to establish that Defendant Busby was even responsible for training Defendants Bonner and Thornton, much less that he was negligent in his training of these Defendants.  In short, there is no allegation that Defendant Busby had any "personal involvement" in any of the events related to Plaintiff's claims.  There can be no "deliberate indifference" when there is no allegation of knowledge of any allegedly violative practices.  For these reasons, Plaintiff's complaint against Defendant Busby should be dismissed.

With respect to Plaintiff's inadequate medical care complaints, generally, a supervisory official cannot be liable under § 1983 for alleged medical mistreatment unless he was personally involved in the violation or where his corrective inaction constitutes deliberate indifference toward the violation.  Boyd, 47 F.3d at 968 (citing Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993)); see also Johnson v. Lockhart, 941 F.2d 705, 707 (8th Cir. 1991) ("Abdication of policy-making and oversight responsibilities can reach the level of deliberate indifference when tacit authorization of subordinates' misconduct causes constitutional injury").  To be held liable, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." Boyd, 47 F.3d at 968 (quoting Ripson v. Alles, 21 F.3d 805, 809 (8th Cir.

1994)).  Again, Plaintiff has failed even to allege personal involvement or knowledge by Defendant Busby in any of the incidents asserted.

## B.    General Conditions of Confinement

The Eighth Amendment "prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities."  Smith  v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996) (citing Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989)) ("inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time").  Only the "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986) (citing Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  Eighth Amendment violations require both objectively harsh conditions of confinement and a subjectively culpable state of mind on the part of prison officials in creating or condoning those conditions.  Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993) (citing Wilson v. Seiter, 501 U.S. 294 (1991)).  Thus, a prisoner alleging unconstitutional conditions of confinement must prove, first, that the conditions challenged were objectively, sufficiently serious, in this case, that the punishment imposed amounted to "the denial of 'the minimal civilized measure of life's necessities.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Rhodes v. Chapman, 425 U.S. 337, 347 (1981)); Smith, 87 F.3d at 268 (citing Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989)).  The prisoner must also prove that the prison official whose actions are challenged had a sufficiently culpable state of mind, in this case, that Defendants Bonner and Thornton "acted or failed to act despite [their] knowledge of a substantial risk of serious harm."  Farmer, 511 U.S. at 842.  In meeting this subjective requirement, an

inmate must show that prison officials acted with deliberate indifference, which cannot be established through acts of negligence or inadvertence. <u>Wilson</u>, 501 U.S. at 303, 305-06. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety . . . ." <u>Id</u>. at 298-99 (quoting <u>Whitley</u>, 475 U.S. at 319).  Last, the prisoner must prove that the alleged deprivations, either individually or in combination, caused him an identifiable physical or emotional harm or prevented the meeting of his basic human necessities. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8-9 & 16-17 (1992) (Blackmun, J., concurring) (de minimis infliction of psychological pain is not actionable under the Eighth Amendment); <u>Seltzer-Bey v. Delo</u>, 66 F.3d 961, 964 (8th Cir. 1995) (no constitutional violation where inmate fails to demonstrate that he suffered an injury or adverse health consequences as result of his confinement); <u>Rodgers v. Thomas</u>, 879 F.2d 380, 384-85 (8th Cir. 1989).

Although the Eighth Amendment's prohibition of cruel and unusual punishment bars more than physical torture, "discomfort compelled by conditions of confinement, without more, does not violate the amendment." <u>Smith v. Coughlin</u>, 748 F.2d 783, 787 (2d Cir. 1984) (quoting <u>Jackson v. Meachum</u>, 699 F.2d 578, 581 (1st Cir. 1983)).  Minimal deprivations simply do not violate the Constitution, <u>Green v. Baron</u>, 879 F.2d 305, 309 (8th Cir. 1989) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 n. 21 (1979));[3] and not every deprivation is sufficiently serious to rise to the level of a constitutional violation, <u>Cosby v. Purkett</u>, 782 F. Supp. 1324, 1329 (E.D. Mo. 1992).  This is particularly true where the alleged deprivation was brief. <u>Whitnack v. Douglas County</u>, 16 F.3d 954, 958 (8th Cir.

---

[3] Due process requires that a pretrial detainee not be punished; the Eighth Amendment requires that the punishment imposed not be cruel and unusual.

1994).  Moreover, limitations placed on inmates do not violate the Eighth Amendment unless the conditions of confinement are "totally without penological justification," "grossly disproportionate," or "involve the unnecessary and wanton infliction of pain."  Smith, 748 F.2d at 787 (citing Rhodes, 452 U.S. at 346) (quoting Gregg v. Georgia, 428 U.S. 153, 183 (1976)).  "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'"  Whitnack, 16 F.3d at 957 (citing Wilson, 501 U.S. at 304).  "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Id. (citing Wilson, 501 U.S. at 305).  Moreover, "[t]he Constitution does not mandate comfortable prisons," it simply prohibits "inhumane ones."  Farmer, 511 U.S. at 832 (citing Rhodes, 425 U.S. at 349).

With respect to his conditions claims, Plaintiff has alleged that the Crittenden County Detention Facility was germ infested with rodents and insects, that he was housed with and exposed to other inmate/detainees with various diseases such as Tuberculosis, Hepatitis B & C, AIDS, and extreme cases of staph infection, that he received no recreation or form of entertainment (i.e., no reading material, television or radio, and only a local newspaper), that there was no intercom system in the event of an emergency, the facility was overcrowded, he was charged for medication, there was no notary service, and he had no access to a law library.  He has further alleged that there were no TB lights in the pod and there was no inmate handbook.

Plaintiff must prove, first, that the challenged conditions denied him the minimal civilized measure of life's necessities.  He must next prove that Defendants Bonner and

Thornton were deliberately indifferent to the risk of harm posed by his conditions. Last, he must prove that the alleged deprivations, either individually or in combination, caused him an identifiable physical or emotional harm or prevented the meeting of his basic human necessities. Defendants contend that the conditions of Plaintiff's confinement were not unconstitutional and none (of the conditions complained of) resulted in a deprivation of a single human need (see docket entry #46). The Court agrees. One of the main foundations of Plaintiff's numerous allegations is that he had been on "unwarranted lock down" status for six months. Defendants' evidence demonstrates (see docket entry #47) that contraband (tobacco) was found in Plaintiff's cell on March 18, 2006, that he refused to return to his cell and physically struck an officer on March 26, 2006, that he refused lunch, refused to return to his cell, and physically fought officers Huff and Lucas on March 27, 2006, and that on April 2, 2006, Leroy Turner found him guilty of refusing staff orders and fighting with staff and ordered Plaintiff locked down indefinitely. Defendants' evidence further demonstrates that Plaintiff was segregated for creating a hostile environment in his "pod" specifically in connection with false remarks he made in September 2006 concerning his Tuberculosis diagnosis (a claim medical staff has denied) and that he was not receiving medication for same. Furthermore, if Plaintiff in fact did have Tuberculosis, whether he was allegedly exposed to other TB inmates or whether there were TB lights in the pod is not relevant. The Court additionally notes that administrative segregation by definition involves the restriction of certain privileges including "entertainment" and recreation. Plaintiff has failed to allege, must less establish, that any of the alleged deprivations, individually or in combination, caused him an identifiable physical or emotional harm or

prevented the meeting of his basic human necessities.  For these reasons, his conditions claim must be dismissed.

Plaintiff's remaining allegations lack constitutional weight too.  The fact that there was no intercom system in the event of an emergency does not equate to a presently existing actual threat of immediate irreparable harm.  Rather, it is nothing more than a conclusory allegation of a potential future threat that could lead to potential future physical harm.  Nor was Plaintiff constitutionally entitled to a notary service or to an inmate handbook.[4]  Last, his general allegation, without anything more, that he had no access to a law library fails to state a claim.[5]

## C.   Deliberate medical indifference

Defendants next contend that Plaintiff offers no evidence in support of his allegation that he was denied medical attention because he could not pay for it.  They further contend that he has failed to establish that he had a serious medical need, that he has failed to allege or offer any evidence that Defendants ignored a critical or escalating situation, and that he has failed to allege or offer any evidence that any delay in receiving treatment caused him an identifiable injury.

To prevail on his claim of deliberate medical indifference Plaintiff must allege acts or omissions by Defendants "sufficiently harmful to evidence deliberate indifference to [his]

---

[4] Plaintiff's claim that he was required to pay for medication will be addressed separately in this recommendation.

[5] "Prison officials may not deny or obstruct an inmate's access to the courts to present a claim."  McMaster v. Pung, 984 F.2d 948, 953 (8th Cir. 1993) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977) and Johnson v. Avery, 393 U.S. 483, 485 (1969)).  However, an inmate has no standing to pursue an access claim unless he can demonstrate that he suffered prejudice or actual injury as a result of the prison officials' conduct.  Lewis v. Casey, 518 U.S. 343, 351-52 (1996); McMaster, 984 F.2d at 953.

serious medical needs." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  The Eighth Circuit has interpreted this standard to include both objective and subjective components: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Jolly, 205 F.3d at 1096 (citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)); see also Stetter v. Riddick, 6 Fed. Appx. 522 (8th Cir. 2001) (unpub. per curiam) (citing Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997)).  This standard has been well settled for some time and Plaintiff's burden is substantial.  In determining whether Defendants were deliberately indifferent to his serious medical needs, Plaintiff must demonstrate "more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  Moreover, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Id.

First, Plaintiff must establish that he suffered from an objectively serious medical need.  A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would recognize the necessity for a physician's treatment. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); see also Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999).  Next, Plaintiff must establish that Defendants were (1) personally aware of his serious medical needs; and (2) deliberately disregarded those needs. Coleman, 114 F.3d at 785-86.

When an inmate is complaining about a delay in treatment, as Plaintiff herein is, the objective "seriousness" of the deprivation must be measured by reference to the *effect* of any delay. Coleman, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502

13

(8th Cir. 1997)).  To succeed on his claim, Plaintiff must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment, i.e., that Defendants ignored a critical or escalating situation, or that the delay adversely affected his prognosis.  Id.; Beyerbach v. Sears, 49 F.3d 1324, 1326-27 (8th Cir. 1995).[6]

Plaintiff claims he was diagnosed with Tuberculosis in July 2006, prescribed medication by the Crittenden County Health Department, and was allegedly denied his medication for seven weeks (docket entry #12).  Despite his numerous additions to his complaint, he never once mentions "who" denied him his medication nor does he connect the named Defendants to this claim in any manner.  Nor does he allege any injury brought about due to the alleged delay in receiving his medication.  In fact, Defendants contend that Plaintiff did not have Tuberculosis at all and Plaintiff has put nothing in the record to establish that he did.  For these reasons, Plaintiff's medical claim fails as well.

## D.    Excessive Force

Plaintiff has alleged that he was attacked and beaten (for wanting to see a supervisor) on March 27, 2006, by officers James Huff and Shannon Childers and denied medical attention because he was unable to pay.  He has never named these individuals as defendants.  Again, he attempts to hold Defendants Bonner and Thornton liable for the alleged deprivation by virtue of their supervisory positions alone.  He has not alleged any

---

[6] See also the following unpublished cases of Jackson v. Hallazgo, 30 Fed. Appx. 668 (8th Cir. 2002) (unpub. per curiam) (citing Coleman, 114 F.3d at 784) ("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); O'Neal v. White, 221 F.3d 1343 (8th Cir. 2000) (unpub. per curiam) (citing Crowley, 109 F.3d at 502) (concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim").

facts that indicate that either Defendant Bonner or Defendant Thornton had any personal involvement or knowledge of the alleged use of force other than the incident report itself, and he has not alleged that either Defendant failed to properly supervise and/or train the personnel involved in the alleged matter.  For the same reasons as those set forth in Section  III A herein, liability does not attach.

**E.    Arguments Raised by the Court Sua Sponte**

Although Defendants fail to raise the following issues, this Court does so sua sponte as additional bases for the dismissal of Plaintiff's action.

**1.    Due Process**

Plaintiff's allegation that he'd been on "unwarranted lock down" status for six months and had filed fourteen grievances seeking relief from same yet none had been answered fails because he has no liberty interest in general jail population placement.  Plaintiff has also further alleged that he was placed on "23/1" lock down on September 29, 2006, by order of Defendant Bonner allegedly in retaliation for talking too much about having TB and not receiving his medication (docket entry #14); and that he was allegedly threatened by Defendants' attorney to file no further complaints with jail administration, and he feared further criminal charges would be brought against him before his release in retaliation for filing the present lawsuit (docket entry #15).

To state a cognizable claim for denial of due process in the punitive isolation context, Plaintiff must be able to allege the loss of a protected liberty interest to which due process protections apply.  This Plaintiff cannot do.  Analysis of Plaintiff's claim begins with Sandin v. Conner, 515 U.S. 472 (1995).  Under Sandin, a liberty interest is implicated and thus triggers due process protections, when an inmate is restrained in such a way that it

15

"imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and represents "a dramatic departure from the basic conditions" of the inmate's confinement. Id. at 484-85.

Under Sandin, this Court must initially ascertain whether the discipline imposed either represented "a dramatic departure from the basic conditions" of Plaintiff's confinement or exceeded similar, but totally discretionary, restraints in either duration or degree of restriction. Id. at 485-86. To measure whether the particular restrictions imposed on an inmate are atypical and significant, Sandin instructed courts to consider the following three factors: 1) the effect of the segregation on the length of prison confinement; 2) the extent to which the conditions of the segregation differ from other routine prison conditions; and 3) the duration of the segregation imposed compared to discretionary confinement. Id. at 484. The length of time of a prisoner's segregation is a significant factor in the determination of whether the confinement is an atypical and significant hardship. Id. at 475-76, 486 & n.2.

In a number of cases, the Eighth Circuit has consistently held that administrative and disciplinary segregation are not the kind of "atypical and significant" deprivations that create a liberty interest under Sandin. See Portley-El v. Brill, 288 F.3d 1063, 1065-66 (8th Cir. 2002) (neither thirty days punitive segregation nor plaintiff's initial reclassification to a maximum security institution in another state was an atypical and significant hardship; district court did not err in dismissing claims under 28 U.S.C. § 1915A for failure to state a claim under Sandin); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997); Kennedy v. Blankenship, 100 F.3d 640, 642-43 (8th Cir. 1996) (due process protections not triggered by transfer from administrative segregation to punitive isolation for thirty days, resulting in

16

loss of privilege of working and earning good-time credits, and restrictions on mail, telephone visitation, commissary and personal possessions privileges); <u>Wycoff v. Nichols</u>, 94 F.3d 1187, 1189-90 (8th Cir. 1996) (no liberty interest arising where prisoner served forty-five days in administrative segregation before disciplinary decision was reversed); <u>Ochs v. Thalacker</u>, 90 F.3d 293, 297 & n.4 (8th Cir. 1996) (one month in segregated status not "atypical and significant" and was related to prison's need to protect plaintiff and other inmates).  The Eighth Circuit has reached similar results in several unpublished decisions as well.  <u>Hemphill v. Delo</u>, 124 F.3d 208 (unpub. per curiam) (8th Cir. 1997) (four days of lock down, thirty days in disciplinary segregation and 290 days in administrative segregation was not "atypical and significant hardship" when compared to the burdens of ordinary prison life); <u>Driscoll v. Youngman</u>, 124 F.3d 207 (unpub. per curiam) (8th Cir. 1997) (135 days in disciplinary and administrative segregation, without meaningful exercise, natural light and adequate library access, not "atypical and significant hardship").

In the instant case, Plaintiff simply does not allege facts sufficient to establish a protected liberty interest.  The fact and reason for his segregation is supported by Defendants' evidence— not only was Plaintiff physically assaultive to jail officials, he was segregated, for his own safety and that of others, for creating a hostile environment in his "pod."[7]  While he may have been on "23/1" lock down for a period of time beginning in September 2006 (<u>see</u> docket entry #6), the conditions did not continue over an extended period of time— Plaintiff was no longer incarcerated by August 2007, and he has claimed

---

[7] Plaintiff challenges all of Defendants' evidence as bogus, false, and fabricated for purposes of their summary judgment motion.  He further claims that he never received a formal disciplinary and never appeared before a disciplinary judge (<u>see</u> docket entry #52).

that his 23/1 confinement lasted a total of either thirty-four or thirty-seven days during a nine-month incarceration  (see docket entries #56, #52, #53).  Plaintiff makes no real allegation of hardship or improper treatment due to his segregated status and in no manner does he explain how the circumstances of his housing amount to an atypical and significant hardship when compared to ordinary jail life, even if misdemeanor inmate/detainees and felons were placed in the same pod.  Plaintiff's segregation, standing alone, cannot be said to constitute an "atypical and significant hardship" in relation to what can reasonably be expected in the jail environment, and is certainly not a "dramatic departure from the basic conditions" of his confinement.  For these reasons too, dismissal is appropriate.

### 2.    Failure to Follow Internal Policies

Although Plaintiff has filed a § 1983 civil rights action, he does not allege a federal constitutional violation against Defendants Bonner or Thornton.  In his motion to amend to add additional Defendants (docket entry #3), Plaintiff included Defendants Bonner and Thornton in his lawsuit based on their knowing disregard of the detention center's grievance procedure, and deliberate disregard of policy for disciplinary and punitive action by locking down misdemeanor inmate/detainees and felons in the same pod.  Even if Defendants failed to follow internal policy with respect to the grievance procedure and disciplinary and punitive housing assignment, it neither creates a constitutional right, nor does Defendants' failure to follow such a policy rise to the level of a § 1983 claim.  Moreover, Plaintiff has not alleged any injury by virtue of his placement in this particular housing situation.  See Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996) (no federal constitutional liberty interest in having state officers follow state law); see also Smith v. Rucker, 259 F.3d 933 (8th Cir. 2001) (per curiam) (inmate's allegation that prison

18

officials violated his due process rights by failing to follow administrative regulations did not state a claim; the due process clause does not federalize state-law procedural requirements); <u>Hughes v. Lee County Dist. Court</u>, 9 F.3d 1366, 1367 (8th Cir. 1993) (assertion that state violated its own procedural guidelines does not state a federal claim); <u>Valiant-Bey v. Morris</u>, 829 F.2d 1441, 1444 n.5 (8th Cir. 1987) (§ 1983 claim cannot be premised on violation of state regulation).  Without a constitutional violation, there is no basis to award Plaintiff the relief he seeks.  <u>Williams v. Davis</u>, 200 F.3d 538, 539 (8th Cir. 2000).  Even assuming that each fact alleged by Plaintiff is true, neither alone nor in combination do they amount to an independent constitutional violation; therefore, Defendants cannot be held liable under § 1983 and Plaintiff's claims against them should be dismissed.

## IV.  Conclusion

In accordance with the above, IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' motion for summary judgment (docket entry #45) should be GRANTED.

2.    Plaintiff's case should be DISMISSED in its entirety WITHOUT PREJUDICE.

3.    All PENDING MOTIONS should be DENIED AS MOOT.

4.    The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any order adopting this recommendation, and any judgment entered thereunder, would not be taken in good faith.

5.     This dismissal should count as a "strike" as frivolous pursuant to 28 U.S.C. § 1915(g).[8]

DATED this 10th day of March, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

---

[8] Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the in forma pauperis statutes] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.